IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JANICE MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-01012-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Acting Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Janice Mitchell's application for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had a variety of severe impairments, but retained the residual functional capacity ("RFC") to perform her past work as an admissions clerk.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her application on July 9, 2012, alleging a disability onset date of March 22, 2012. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on August 2, 2013, issued a decision

finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on October 23, 2014, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue,* 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner,* 646 F.3d at 556.

## Discussion

Plaintiff argues the ALJ erred: (1) in finding her allegations of pain and disabling symptoms not fully credible; and (2) in evaluating her treating physicians' opinions. These arguments are without merit.

**A.     The ALJ's credibility assessment is supported by substantial evidence.**

Plaintiff contends the ALJ erred in discrediting her testimony because he did not discuss her solid work history when evaluating her credibility. Pl.'s Br. (Doc. 7) at 19. Plaintiff notes she worked for the same employer for over fifteen years, and she even attempted to return to her job after suffering a serious on the job injury in 2012. *Id.* Plaintiff also argues the ALJ failed to acknowledge the depth and breadth of doctors' reports confirming her disabling pain. *Id.* She contends she consistently reported pain and sought treatment for pain. *Id.*

As the Court has often observed, credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

In the present case, although the ALJ did not acknowledge Plaintiff's admirable work history, he provided good reasons for discounting her credibility which are supported by substantial evidence. First, the ALJ found Plaintiff's allegations were "not supported by the medical evidence." R. at 26; *see Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding a lack of objective medical evidence is a proper factor to consider in assessing a claimant's credibility). The ALJ noted that diagnostic testing showed tricompartmental degenerative

3

spurring with moderate medial compartment narrowing in Plaintiff's left knee, spondylosis in her lower back with facet arthropathy and degenerative disc bulges, as well as moderate to severe foraminal stenosis in her lower spine. R. at 24-25. But he also noted that a physical examination conducted in July 2012 by her pain management doctor, Dr. Sean Clinefelter, M.D., showed Plaintiff retained full muscle strength in both legs, her straight leg raise test was negative, and she had full deep tendon reflexes on both sides, all of which indicated her back and knee problems were not disabling. R. at 25, 310. Another exam conducted a year later, in July 2013, confirmed these findings. Dr. Clinefelter found Plaintiff still had full motor strength in both legs, was able to stand and ambulate, and had "normal" range of motion in her knees with no instability or crepitus. R. at 374.

Second, the ALJ discounted Plaintiff's credibility because she received "minimal" treatment for pain, and the treatment she did receive substantially lessened the pain. As the ALJ noted, Plaintiff's doctors treated her pain somewhat conservatively, declining to recommend surgery in light of possible complications from her diabetes, instead encouraging her to lose weight to help relieve her back and knee pain.[2] She did, however, receive epidural steroid injections from Dr. Clinefelter, and his notes show they provided significant relief. Plaintiff reported: she experienced from 50-percent to nearly 100-percent pain relief; that this relief lasted anywhere from two to four months; and that the injections combined with her pain medication reduced her pain to a "tolerable" level. R. at 255, 371-74. This confirmed Dr. Clinefelter's repeated observation that she was not in "acute" distress. R. at 264, 372. These are valid reasons to discount Plaintiff's credibility. *See Moore v. Astrue*, 572 F.3d 520, 524-25 (8th Cir. 2009) (holding the ALJ properly considered Plaintiff's conservative treatment in discounting her claim

---

[2] During the relevant time period, Plaintiff was morbidly obese and did not follow her physician's repeated recommendations to lose weight.

of disabling pain); *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003) ("Impairments that are controllable or amenable to treatment do not support a finding of total disability."); *Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001) (holding the claimant's failure to follow a recommended course of treatment weighs against the claimant's credibility).

Granted, there is evidence supporting Plaintiff's argument that she consistently reported pain and sought treatment for it. But this does not change the fact that the ALJ gave good reasons for discounting Plaintiff's credibility, and these reasons are supported by the record. *See Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) ("We defer to the ALJ's evaluation of [a claimant's] credibility, provided that such determination is supported by good reasons and substantial evidence, even if every factor is not discussed.") (internal quotations omitted). Accordingly, the Court must defer to the ALJ's credibility determination. *See Gregg*, 354 F.3d at 713.

**B.     The ALJ did not err in evaluating the medical opinions in the record.**

Plaintiff also argues the ALJ erred in weighing the opinions of her treating physicians. Pl.'s Br. at 13-18. Plaintiff argues the ALJ should have given controlling weight to the opinion of her primary physician, Dr. Michael DiBernardo, M.D., who had been treating Plaintiff for over twenty years. *Id.* at 13-15. Dr. DiBernardo made several dramatic findings, writing that Plaintiff: was incapable of standing or walking more than an hour in an eight-hour workday; was incapable of sitting for more than two-hours a day; and would have to spend the majority of her day lying down attempting to relieve her pain. R. at 349-50. Plaintiff further suggests that the opinions of her pain management specialist, Dr. Clinefelter, and a consulting neurosurgeon, Dr. Arthur Jenny, M.D., which she contends support Dr. DiBernardo's opinion, should also have

been given controlling weight.[3]  Pl.'s Br. at 17.  Plaintiff contends all three opinions, if given deference, would have resulted in her being found disabled.  *Id.*

Where, as here, the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them.  *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008).  The ALJ may give significant or substantial weight to a medical opinion but not embrace every recommendation encompassed in it.  *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." (*quoting Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)).

The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record.  20 C.F.R § 416.927(c)(2).  But "an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence."  *Martise*, 641 F.3d at 925.  If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so.  *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).

The ALJ gave good reasons for assigning little weight to Dr. DiBernardo's opinion.  He noted the form setting out the doctor's opinion did not include his notes, and that the doctor's opinion seemed to be based more on the Plaintiff's subjective allegations (which, as discussed above, were not credible) than the objective medical evidence.  R. at 25-26.  The record provides substantial evidence supporting these conclusions.  The form Dr. DiBernardo submitted consists largely of checkboxes and conclusions; it does not incorporate any of the doctor's treatment notes, or explain why he believed Plaintiff could not sit for more than two hours a day.  R. at

---

[3] Plaintiff initially argues that Dr. DiBernardo's opinion should have been given controlling weight and Dr. Clinefelter's and Dr. Jenny's opinions simply support this finding.  Pl.'s Br. at 13-16.  Later, Plaintiff states all three opinions are entitled to controlling weight.  *Id.* at 17.

349-50. In fact, the conclusions expressed in Dr. DiBernardo's "Physical Capacities Evaluation" report actually contradict his treatment notes. On several occasions, his examinations of Plaintiff revealed she appeared to "feel well" and was in "no acute distress." R. at 309-11. On other occasions, Dr. DiBernardo observed Plaintiff was uncomfortable due to back pain, but was still "pleasant" and in "no acute distress." R. at. 358, 362, 366, 369. This is consistent with his treatment plan, which was encouraging Plaintiff to eat better and exercise. R. at 361, 365, 367. Consequently, the ALJ properly found that the extreme limitations expressed in Dr. DiBernardo's opinion were not supported, and the ALJ did not err in giving little weight to his opinion. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (affirming the ALJ's rejection of an opinion because it was conclusory and in a checklist format); *Strongson v. Barnhart*, 361 F.3d 1066, 1070-71 (8th Cir. 2004) (permitting the ALJ to discount a physician's opinion that was "without explanation or support from clinical findings" and "not internally consistent with [the doctor's] own treatment notations").

Neither did the ALJ err in weighing Drs. Clinefelter and Jenny's opinions. Far from bolstering Dr. DiBernardo's conclusions, as Plaintiff suggests, their treatment notes indicate she was not experiencing disabling pain. Both doctors recommended conservative treatment, suggesting she lose weight and get her diabetes under control, and that she follow up with them later regarding her efforts, which she failed to do. R. at 352, 388, 374. Additionally, neither doctor provided any opinion regarding Plaintiff's functional limitations, much less an opinion validating Dr. DiBernardo's extreme limitations. Their non-finding of any remarkable limitations is consistent with the opinion of the state agency physician, Dr. Anselmo Mamaril, M.D., who found that while Plaintiff experienced back and knee pain, she was still capable of working an eight-hour day. R. at 340-48. Thus, the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner,* 646 F.3d at 556.

7

**Conclusion**

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:    September 11, 2015                 /s/ Greg Kays
                                            GREG KAYS, CHIEF JUDGE
                                            UNITED STATES DISTRICT COURT